# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**CHRISTOPHER ANTONIO GROVES**                                                      **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO. 3:21-cv-00695-CWR-LGI**

**WARDEN JAMES MILLER, et al.**                                                   **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation on Defendants' Motion for Summary Judgment [43] filed by Stephen Bailey, Tonja Burks, Burl Cain, and James Miller, on May 23, 2023. Several months have passed, and *pro se* Plaintiff has not filed a response to Defendant's Motion for Summary Judgment [43]. Having considered the submissions, the record, and relevant law, the undersigned recommends that the Motion for Summary Judgment [43] be granted as discussed below.

## BACKGROUND

### I.      Facts and Relevant Procedural History

Plaintiff Christopher Antonio Groves ("Plaintiff" or "Groves"), a post-conviction inmate in the custody of the Mississippi Department of Corrections, brought this case *pro se* and *in forma pauperis* using a form available to prisoners for filing complaints for violations of civil rights, pursuant to 42 U.S.C. § 1983. Plaintiff filed suit against Warden James Miller, C.I.D. Lieutenant Tonja Burks[1], and MDOC Commissioner Burl Cain, on November 1, 2021. *See* Doc. [1]. On December 17, 2021, Plaintiff moved to amend his Complaint to add Officer Stephen Bailey as a defendant. *See* Doc. [7], Motion to Amend. On December 29, 2021, the Court granted Plaintiff's

---

[1] Plaintiff identified this defendant as Tanya Burks. But Defendant identified herself as "Tonja Burks" in her Waiver of Service [14]. Thus, this Court uses the correct spelling of defendant's name throughout this order.

motion and directed the Clerk of Court to add Officer Stephen Bailey to this lawsuit. *See* Doc. [9], Order.

Plaintiff's complete allegations are set forth in his Complaint and were augmented by his sworn testimony at a *Spears*[2] hearing before the undersigned United States Magistrate Judge, on December 6, 2020. *See* Minute Entry, dated 12/6/2020; *see also* Doc. [29], Omnibus Order. Plaintiff claims he was a protective custody inmate at Central Mississippi Correctional Facility ("CMCF"), when he was assaulted by a general population inmate. Doc. [8] at 1. Plaintiff alleges on May 21, 2021, he was in full restraints being escorted to medical by Officer Stephen Bailey, to receive his Haldol shot, when he was attacked and assaulted by another inmate. *See* Doc. [1] at 4. After the inmate was pulled off him, Plaintiff alleges he was taken to Warden James Miller's office. *Id*. He alleges Assistant Warden Goff and Officer Stephen Bailey were present in Warden Miller's office when he explained the incident to the warden. *Id*. Plaintiff insists this entire incident was captured on surveillance video cameras located in CMCF's medical clinic.[3] As a result of the assault, Plaintiff claims he suffered severe neck and back injuries. *Id*.; *see also* Doc. [8] at 2.

---

2. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).
3  On June 28, 2023, the Court granted Plaintiff's first request for subpoena of the surveillance camera footage, and it ordered Plaintiff to prepare the subpoena duces tecum. *See* Doc. [49]. On August 7, 2023, Plaintiff filed his second motion, requesting that the Court serve a subpoena on CMCF for production of the camera footage. *See* Doc. [50]. On September 28, 2023, Plaintiff advised, via letter, that he had been transferred between prisons and did not receive the Court's response to his motion; thus, he reasserted his request for subpoena for the camera footage. Doc. [52]. On November 19, 2023, the Court, noting Plaintiff's *pro se* status, ordered Defendants "to produce the video(s) of the specified incident, or any objection thereto, and file a notice of service of their discovery production, on or before December 18, 2023. Doc. [54]. On January 29, 2024, Plaintiff filed his third motion requesting the subject camera footage. Doc. [58]. Upon review of the docket, the Court noted the absence of either Defendants' notice of service or objection to the Court's Order [54], directing Defendants to produce the camera footage. On January 31, 2024, the Court entered an Order to Show Cause [60], directing Defendants to show cause for their failure to respond to the Court's prior Order [54]. On February 5, 2024, Defendants responded and asserted that after investigation, MDOC determined "there is no documentation nor any video footage concerning Plaintiff's alleged May 21, 2021, assault." Doc. [51] at 2, *see also* Affidavits of MDOC Deputy Director and Interim Director CID, Docs. [61-1], [61-2]. The Court notes that the absence of the alleged camera footage has no impact on the undersigned's recommendation in this case. Further, it is important to point out that Defendants do not deny that the assault occurred.

Plaintiff alleges constitutional violations of inadequate protection, denial of medical care, and violation of his Due Process rights. He seeks both compensatory and punitive damages – "$1,000 a day per defendant, from the date this event took place to the day the court received this paperwork [11/1/2011]." *Id*. Plaintiff faults Warden Miller and Officer Stephen Bailey for failing to protect him. *See* Doc. [8]. He sues MDOC Commissioner Burl Cain and C.I.D. Lieutenant Tonja Burks, alleging they failed to help him after the incident. *Id*. at 4. The Court summarizes Plaintiff's claims, as detailed in his Complaint [1], Response to Court's Order [6] and his testimony at the Spears Hearing. *See* Doc. [8]; Doc. [30], Omnibus Hearing Transcript, dated December 6, 2022.

   a. **Warden James Miller**

Plaintiff claims Warden Miller violated his Due Process and Eighth Amendment rights, by failing to protect him as a protective custody inmate. Doc. [8] at 1. He contends Warden Miller failed to enforce MDOC policy, which he claims requires staff to clear the hallway and medical clinic for protective custody inmates being escorted. *Id*. He also claims Warden Miller denied him medical attention after the assault. *Id*. Plaintiff testified as follows:

   Q.   [W]ill you please tell me why you're suing Mr. Miller?

   A.   I'm suing Mr. Miller due to the fact that he was the warden over the R & C where I was housed at the time. I'm suing him due to the fact -- to my situation. He was there that day. I told my situation to him, and he did nothing about it but sent me back to my cell.

   Q.   And what situation is that?

   A.   I got attacked and assaulted by another inmate while I was in full restraint on protective custody.

   Q.   And did that attack occur in the presence of Mr. Miller, or you told him about it afterwards?

   A.   It happened in the medical clinic. Mr. Miller was in his office. But not only

3

> Q. did I tell him about it; the officer there with me told him also.
>
> Q. What did you want Mr. Miller to do for you?
>
> A. I wanted him to see to the situation -- do something about the situation, get me some medical attention, to do something about the situation. I just needed something to be done. I don't know the word I'm looking for, but it's a word that I'm looking for. I just wanted want him to do something about the situation. He didn't do anything about it but send me back to my cell.
>
> Q. Okay. Did you share a cell with the inmate that attacked you?
>
> A. No, ma'am. I was in a single cell.
>
> Q. Okay. So you weren't housed with the inmate that assaulted you?
>
> A. I didn't know the inmate. I was walking into the middle of the clinic, and he attacked me out the blue. He just attacked me. I didn't even know who he was.

Doc. [30] at 8:14-9:12.

    b. **<u>C.I.D. Lieutenant Tonja Burks</u>**

Plaintiff claims Lt. Burks violated his Eight Amendment and Equal Protection rights. Doc. [8] at 2. He claims she failed to adequately investigate the assault, which hindered him from pressing criminal charges against his attacker. *Id*. Plaintiff also argues Lt. Burks ignored his letters regarding the assault, including his request for medical assistance for his alleged injuries. *Id*. Plaintiff also provided the following:

> Q. Tell me why you're suing Tonja -- is it Tonja [TON-YA] or Tanya [TAN-YA] Burks?
>
> A. I think her name is Tonja [TON-YA].
>
> Q. Tonja Burks. Okay.
>
> A. I'm suing Ms. Tonja -- Lieutenant Tonja Burks because she was over CID. Now, I addressed her -- I addressed it to her several times. She already knew

4

> about the situation I addressed her, and she didn't do anything about it neither. She kept telling me that her boss will come see me. She tell me that about three or four times, and no one still came to see me.

Q.   So what did you ask Ms. Burks to do for you, just investigate the incident?

A.   Yes, ma'am. Yes, ma'am.

Doc. [30] at 9:13-10:1.

    **c.   Commissioner Burl Cain**

Plaintiff claims Commissioner Cain violated his rights to protection and to receive medical care. Doc. [8] at 2. He alleges Commissioner Cain ignored MDOC's policies and procedures and his own executive order regarding assaults. *Id*. He claims Commissioner Cain failed to respond to his request for medical care, his request for a full investigation, his request that charges be filed and that disciplinary action be taken against MDOC staff for breach of security. *Id*. Plaintiff explained further,

Q.   What about Commissioner Cain, Burl Cain. Why are you suing Mr. Cain?

A.   I wrote Commissioner Burl Cain two letters concerning this situation. I got no response. Due to him being the commissioner, no one still came to see me about my situation, about the incident. After I wrote him, he didn't write me back or anything. And he write other inmates back when they write him, but I didn't get no response.

Q.   Okay. Mr. Groves, I'm a little confused. Were you telling him you continued to be in fear of this inmate that attacked you?

A.   No, ma'am. I didn't know the inmate.

Q.   Okay. So you were writing them to tell them that you had been attacked, but explain to me what you wanted them to do for you at that point other than separate you from this person?

A.   I was already separated from that person. I was on lockdown in the hole on protective custody.

5

Doc. [30] at 10:2-18.

### d. Officer Stephen Bailey

Plaintiff claims Officer Bailey was at his side when he was attacked, but he failed to protect him from the other inmate. Doc. [8] at 3. He claims Officer Bailey saw the other inmate coming towards him, but he stepped out of the way and deliberately left him, "a protective custody inmate completely vulnerable to [the] violent assault while [he] was in full restraints." *Id*. He claims Officer Bailey waited until he was on the floor "hurt severely" before he pulled the other inmate away from Plaintiff. *Id*. Plaintiff claims Officer Bailey, a maximum-security officer, was equipped with pepper spray, but he failed to use it. He also claims Officer Bailey denied him medical assistance after the incident. *Id*. Plaintiff restated these claims during the *Spears* hearing.

> Q. Well, let's talk about Officer Bailey. Tell me why you're suing him.
>
> A. He was the officer there with me. He let this guy get to me, and he wasn't supposed to. He wasn't supposed to let no one close to me while I'm walking in the hallway or in medical, anywhere. No inmate is supposed to get close to me, period.
>
> Q. Okay. And Officer Bailey was the one escorting you in medical, correct?
>
> A. Yes, ma'am. He right there along my side.
>
> Q. Okay.
>
> A. And I shouldn't get attacked by another inmate.

Doc. [30] at 10:22-11:7.

## STANDARD

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex*

6

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). The Court must view the evidence in the light most favorable to the non-moving party. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). Without proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, Civ. Action No. 5:03-cv-241-BN, 2005 U.S. Dist. LEXIS 43286, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991), *cert. denied*, 503 U.S. 987, 112 S. Ct. 1675, 118 L. Ed. 2d 393 (1992). If the moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with evidence that creates a genuine issue for trial. *Celotex*, 477 U.S. at 330. In deciding a motion for summary judgment, the Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a

7

scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Without proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I.     Qualified Immunity

Defendants claim they are entitled to qualified immunity against Plaintiff's claims. A defendant's individual capacity is only protected from liability if the principle of qualified immunity applies. Even then, each official "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The test for qualified immunity is well-established: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). Plaintiff has the burden of rebutting the defense, and if he fails to satisfy either prong, the defendant prevails. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting the lower courts permission to evaluate either prong of the qualified immunity analysis

first). If the Court finds that there was no constitutional violation, the Court need not address the second part of the test. *Marks v. Hudson*, 933 F.3d 481, 483 (5th Cir. 2019); *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013).

Accordingly, this Court must examine the summary judgment record and determine whether Groves has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Defendants' conduct violated an actual constitutional right for each claim, and whether their conduct was objectively unreasonable in light of clearly established law. Groves' claims against Defendants Warden Miller, Lt. Burks, Commissioner Cain, and Officer Bailey fall within the categories of failure to protect, denial of medical care, and denial of due process.

### a. Failure to Protect

Prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); see also *Horton v. Cockrell*, 70 F.3d 397, 400–01 (5th Cir.1995). But not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To establish a failure-to-protect claim, Plaintiff must show that he was detained "under conditions posing a substantial risk of serious harm and that [the Defendants] were deliberately indifferent to [Plaintiff's] need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir.1995). "In order to act with deliberate indifference, 'the [Defendants] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). A prison official must have a sufficiently culpable state of mind, so as to be one of deliberate indifference to the inmate's health or safety. *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir.

9

2015) (citations omitted).

The standard to be used in Eighth Amendment cases is one of subjective deliberate indifference, as used in criminal law, not an objective standard as used in civil law. *Williams*, 797 F.3d at 281 (citations omitted). The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Accordingly, a prison official's failure to eliminate a substantial risk of harm which he should have perceived, but in fact did not perceive, cannot support an imposition of liability under the Eighth Amendment. *Id*. at 838.

Defendants submit that Plaintiff's failure-to-protect claim fails, because there is no evidence that these Defendants had any warning, foreknowledge, or suspicion that the assault would occur. Doc. [44] at 8. They point out that Plaintiff informed the warden of the incident "after it had occurred." *Id*. at 6. They also argue that Plaintiff has shown no causal connection between any action by Commissioner Cain and the incident. *Id*. at 7. Defendants argue that Plaintiff has not pointed to any action by Officer Bailey that suggests he allowed the attack. *Id*. at 8. Defendants also contend that Plaintiff's dissatisfaction with Lt. Burks' handling of the investigation, does not amount to a constitutional violation. *Id*. at 7. Further, they argue Plaintiff's claims that Defendant failed to enforce MDOC policies, does not amount to a constitutional violation for which relief can be sought under § 1983. *Id*. at 8. Plaintiff did not file a response to the instant motion.

The Court finds that Plaintiff has failed to establish a failure-to-protect claim against

Defendants, as he has offered no evidence to show that either of the Defendants were aware of a substantial risk of serious harm, failed to eliminate the harm or acted with deliberate indifference to his need for protection. Plaintiff's own statements reveal that the attack was sudden and lasted for a short time before Officer Bailey pulled the other inmate away from Plaintiff and removed Plaintiff from the area. Plaintiff also stated the other inmate was unknown to him, and he was not housed with the other inmate.

Defendants are entitled to qualified immunity and summary judgment as to Groves' claim for failure-to-protect. Plaintiff's claims against Defendants Stephen Bailey, Tonja Burks, Burl Cain, James Miller are due to be dismissed with prejudice.

   b. **Denial of Medical care**

Defendants challenge Plaintiff's claims that he was denied medical care. Defendants argue there is no evidence that Plaintiff made a complaint of physical injury, until nearly five months after the assault. Doc. [44] at 10, 12 n. 1. Defendants argue the Plaintiff had several visits with medical staff between May 21, 2021 and January 12, 2022, before he made his first sick call referencing an injury from the attack.[4] According to Defendants, on January 12, 2022, Plaintiff stated that "he needed to see someone for back pain caused 'when [he] was attacked in medical.'" *Id*. at 11 (quoting Plaintiff's medical records, Doc. [47] at 26, Exh. C). Defendants assert upon receiving the medical complaint, Plaintiff was taken to radiology, where he received X-rays of his back, which showed no abnormalities. Doc. [44] at 11-12. Defendants also state that Plaintiff alleges that he suffered neck and back injuries, but he only mentioned back pain to medical staff. *Id*. at 12. Defendant argues Plaintiff has not shown that a delay in medical treatment caused him

---

[4] Defendants submit that the Plaintiff was seen by medical staff on at least eleven occasions for unrelated medical issues. Doc. [44] at 9-13. But these visits were for mental health intervention and treatment of other issues. *Id*.

11

any harm. *Id*. Defendants also claim Plaintiff's medical records indicate that he had significant back complaints before the alleged assault occurred. *Id*.

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Fifth Circuit has clearly stated that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). And the Fifth Circuit has stated, "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The standard for finding "deliberate indifference" is a subjective inquiry, and the prisoner must show that the jail officials were actually aware of the risk, yet consciously disregarded or ignored it. *Farmer*, 511 U.S. at 837-839. Therefore, actual knowledge and conscious disregard of the risk of harm to the plaintiff is required before liability can be found. *Id*. Furthermore, deliberate indifference cannot be simply inferred from a prison official's mere failure to act reasonably, i.e., from negligence alone. *Lawson v. Dallas County*, 286 F.3d 257, 262-63 (2002), citing *Hare v. City of Corinth*, MS, 74 F.3d 633, 649 (5th Cir. 1996).

In order to prevail on a claim of deliberate denial of medical care, a plaintiff must show that the defendant had "subjective knowledge of a substantial risk of serious medical harm" and was deliberately indifferent in disregarding that risk. *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The Fifth

12

Circuit has held that a plaintiff alleging such a claim must "establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). A plaintiff "must show not only that the defendants' actions in failing to provide medical attention . . . were objectively unreasonable, but also that defendants intended the consequence of those actions." *Id*.

The Court finds that Plaintiff has failed to show that he sustained a serious injury as a result of the alleged assault on May 21, 2021, and that Defendants had actual knowledge of the alleged injuries but consciously disregarded them. Plaintiff's own testimony contradicts his claims that he was repeatedly denied medical care. Plaintiff alleges that his requests for treatment were ignored, yet he testified that he did in fact receive X-rays on his back. He also admitted that he did not file any grievances alleging that he was being denied medical treatment. He testified,

> Q. Okay. Mr. Groves, you're also alleging that you didn't receive any medical treatment after the assault by the other offender; is that correct?
>
> A. That's correct, ma'am. After the incident -- after the incident happened, Officer Stephen Bailey took me straight to Warden Miller office. He explained to Warden Miller what had just happened. The only thing Warden Miller did was send me back to my cell. And the next day I asked for medical attention because my neck was hurt; my back was hurt. And no one took me to the medical. They just left me in my cell. Okay. We're going to see about you. But nothing was done to me. I just laid on my bed. They did no incident report. They did no body sheet on me or none of that. The only thing they did was sent me back to my cell.
>
> Q. Do you recall the next time that you went to medical after this incident happened, how many days?
>
> A. I think it was about a couple months later. A couple months later, I filled out another sick call medical form and told them about my back -- how my back was hurting, about when it was when I got jumped on. It was a couple of months later. It might have been around October. It was somewhere in there.

13

Q. But you were still receiving your medication, correct? You received medication at the end of May, and then you had some office -- some mental health visits in June, correct?

A. Mental health?

Q. Yes, sir. Did you report to them that your neck was hurting?

A. You're talking about mental health?

Q. Or the nurses that administered your medication, did you tell them your neck was hurting, anybody?

A. I told Nurse -- Nurse -- Nurse Fernanderbone (phonetic). It's Nurse Danenderbone (phonetic). I used to always tell her about my neck, my back. It was mostly my back. You know, I had a little pain in my neck, but it was mostly my back. The majority of the pain was my back. It was my back.

Q. And have you received any medical care for your neck and back since then?

A. No, ma'am. No, ma'am. I went in Rankin County. They had came and got me. I think they did an X-ray on my back.

Q. You had X-rays?

A. Yeah. I think they did a X-ray of my back. They came and did an X-ray.

Q. And did you file an ARP related to your medical treatment or not receiving medical treatment?

A. No, ma'am.

Q. Okay.

A. Medical treatment for what?

Q. For your neck and your back.

A. I never received any.

Q. Did you write an ARP grievance complaining that you weren't getting medical care?

A. Oh, no, ma'am.

14

Doc. [30] at 13:13-15:14.

Though Plaintiff claims that he was denied medical care for his alleged injuries, he has not shown that Defendants acted with deliberate indifference regarding the alleged serious medical needs. The undersigned finds no liability exists as to this claim, as Plaintiff provides no evidence that Defendants were aware of an excessive risk to Plaintiff's safety and disregarded that risk. The evidence shows that Plaintiff received a medical evaluation for his back after he complained of back pain related to the incident. *See* Plaintiff's medical records, Doc. [47].

Defendants are entitled to qualified immunity and summary judgment as to Groves' claim for denial of medical care. Plaintiff's claims against Defendants Stephen Bailey, Tonja Burks, Burl Cain, James Miller are due to be dismissed with prejudice.

    c. **Denial of Due Process**

Plaintiff accuses Defendants of failing to conduct a thorough investigation and of violating their own policies and rules related to the safety of protective custody inmates. Doc. [8]. He testified that Defendants failed to assist him after the assault. Plaintiff stated, "[t]hey did no incident report. They did no body sheet on me or none of that." Doc. [30] at 13:23-24. But he also testified that he did in fact submit a grievance through MDOC's ARP, which he attached as an exhibit to his Motion to Amend Complaint [7]. *See* Doc. [30] at 11:8-10. A review of the documentation reveals that on July 20, 2021, Plaintiff filled out a grievance form and attached a hand-written statement detailing the May 21, 2021 incident. The form was initially stamped "Received" on July 7, 2021.[5] *See* Doc. [7-1]. On July 20, 2021, Plaintiff's grievance was rejected, because "there [had] been a time lapse of more the[n] thirty (30) days between the event and the

---

5  The form is also stamped "Received" on July 9, 2021.

15

initial request: Incident happened on (in) 5.21.21 received in this office on 7/2021." *Id*.

As noted above, Defendants contend that Plaintiff's dissatisfaction with Lt. Burks' handling of the investigation, does not amount to a constitutional violation. Doc. [44] at 7. Further, they argue Plaintiff's claims that Defendants failed to enforce MDOC policies, does not amount to a constitutional violation for which relief can be sought under § 1983. *Id*. at 8. Thus, they contend Plaintiff cannot seek relief for this alleged wrongdoing. *Id*.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citations omitted). A prisoner does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir.2005). To determine whether there has been a due process violation, this Court must "ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); see *Bowlby v. City of Aberdeen, Mississippi*, 681 F.3d 215, 220 (5th Cir.2012).

Groves was afforded ample opportunity to address his claims, as established by his own testimony and documentation of his grievance forms. In addition, to prevail in a § 1983 lawsuit, a plaintiff must overcome a defendant's qualified immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense). To discharge this burden, Groves must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time

16

of the actions as established by the evidence. *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir.2004), *cert. denied* 543 U.S. 872 (2004).

A defendant is entitled to summary judgment on a claim of qualified immunity if discovery fails to uncover evidence sufficient to create a genuine issue regarding whether that defendant in fact committed those acts. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). In this case, Groves has brought forward no evidence to support his claims of a denial of his constitutional rights to due process by these defendants. Groves also failed to discharge his burden, because he has not shown that any constitutional violations were committed, or that any of the Defendants acted unreasonably in light of clearly established federal law. The Court, therefore, finds that summary judgment should be granted in favor or Defendants on Plaintiff's claim for denial of due process. Plaintiff's claims against Defendants Stephen Bailey, Tonja Burks, Burl Cain, James Miller are due to be dismissed with prejudice.

## RECOMMENDATION

It is recommended that *Defendants' Motion for Summary Judgment* [43] should be GRANTED, and the case against Defendants Stephen Bailey, Tonja Burks, Burl Cain, and James Miller, should be DISMISSED with prejudice.

## Notice of Right to Object

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party may serve and file written objections to the proposed findings and recommendations within fourteen days after being served a copy of this recommendation. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings, or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to

the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected, except under grounds of plain error. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

SO ORDERED this the 12th day of February, 2024.

    /s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE